**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 04-cv-0865-REB-CBS

SCOTT HILL, as Conservator of the Estate of Katelyn Hill,

      Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,

      Defendant.

---

ALLSTATE INSURANCE COMPANY,

      Counterclaim Plaintiff,

v.

SCOTT HILL, as Conservator for the Estate of Katelyn Hill,

      Counterclaim Defendant.

---

ALLSTATE INSURANCE COMPANY,

      Third-Party Plaintiff,

v.

JOHN PAUL,

      Third-Party Defendant.

---

**ORDER CONCERNING MOTIONS TO DISMISS
COUNTERCLAIMS AND THIRD-PARTY CLAIMS**

---

**Blackburn, J.**

This matter is before me on the following motions: 1) **Plaintiff's Motion To Dismiss Allstate's Affirmative Defenses and Counterclaims Based on Allegations of Fraud** [#140], filed October 6, 2005; and 2) **Allstate Insurance Company's Motion To Dismiss John Paul's Counterclaims** [#179], filed December 15, 2005.  I grant plaintiff's motion in part, and deny it in part, and I deny Allstate's motion.

## I. JURISDICTION

I have jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship).

## II. STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to **FED. R. CIV. P. 12(b)(6)**, I must determine whether the allegations set forth in the claim, if true, are sufficient to state a claim within the meaning of **FED. R. CIV. P.  8(a)**.  I must accept all well-pleaded allegations of the claim as true.  *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."). Thus, Rule 12(b)(6) requires dismissal if taking all well-pleaded facts as true and construing them in the light most favorable to Allstate, it is clear that Allstate can prove no set of facts entitling it to relief on its counterclaims against Hill.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Rocky Mtn. Helecopters, Inc., v. Bell Hellicopter Textron, Inc.*, 24 F.3d 125, 128 (10th cir. 1994).

### III. FACTUAL ALLEGATIONS

The factual allegations relevant to Allstate's counterclaims against Scott Hill are drawn from Allstate's Counterclaim against Hill, as stated in Allstate's answer and counterclaim [#129], filed September 16, 2005. Other facts, which provide context for these counterclaims, are drawn from the complaint and from the parties' motions for summary judgment. Additional factual allegations relevant to third-party defendant John Paul's counterclaims are discussed in Section V, below.

On July 25, 2002, Katelyn Hill was seriously injured in a car accident. Katelyn's mother, April Hill, was killed in the accident. Plaintiff Scott Hill, Katelyn's father and the conservator of her estate, claims that the car in which Katelyn was riding was insured by defendant Allstate Insurance Company. In his complaint, Scott Hill claims Katelyn is entitled to additional benefits, known as APIP benefits, under the Allstate Policy. Acting as the conservator of Katelyn Hill's estate, Scott Hill seeks an award of APIP benefits from Allstate. In an order issued concurrently with this order, I have granted Allstate's motion for summary judgment on Scott Hill's remaining claims against Allstate.

The insurance policy on which Scott Hill bases his claims against Allstate was purchased by third-party defendant John Paul on August 17, 2000. On that date, John Paul and April Paul (later April Hill) were married but separated. The Allstate insurance policy purchased by John Paul listed the car that later was involved in the accident as an insured vehicle. John Paul and April Paul's dissolution of marriage was finalized on November 16, 2000. April Paul later married plaintiff Scott Hill, and Katelyn Hill is a child of this marriage. April Paul changed her name to April Hill after the marriage. For

the sake of clarity, I will refer to her as April Paul.  The Allstate policy apparently was renewed regularly until July 25, 2002, when the incident occurred.

In its counterclaims against Scott Hill, Allstate claims that John Paul procured the Allstate policy by fraud.  Allstate claims it is entitled to a declaratory judgment holding that Allstate is not obligated to provide further benefits under the policy.  In addition, Allstate seeks to rescind the insurance policy because it was procured by fraud.  Allstate alleges that John Paul made certain fraudulent misrepresentations, and fraudulently concealed certain material facts, when he applied for the insurance policy on August 17, 2000.  Allstate alleges that Paul concealed that he was separated from April Paul, and that they soon would be divorced, when he made the application. *Counterclaim*, ¶ 7.  Paul allegedly represented that he and April Paul were members of the same household when they were not.  *Id.*  In addition, Paul allegedly misrepresented his employment status on the application, reporting that he was employed as a manger when in fact he was unemployed.  *Id.*

According to Allstate, after the policy was issued and until the accident, John Paul, April Paul (Hill) and Scott Hill never disclosed to Allstate that John Paul and April Paul were divorced, that April Paul had married Scott Hill, or that John Paul and April Paul were residing in separate households.  *Id.*, ¶¶ 11-12.  The policy provides that the policy was issued in reliance on the information provided by the insureds concerning autos, persons insured, and the insureds' place of residence.  *Id.*, ¶ 14.   The policy includes the following provision: "To properly insure your auto, you must promptly notify us when you change your address or whenever any resident operators insured by your policy are added or deleted."  *Id.*

4

Reasonably relying on John Paul's representations and concealment in the application, Allstate says it issued an auto insurance policy which provided for the insurance of John and April Paul as a single household.  *Id.*, ¶ 9.  Allstate charged a premium based on the actuarial risk associated with a one-household policy.  *Id.* Absent the fraudulent misrepresentations and concealment of John Paul, April Paul, and Scott Hill, Allstate claims, it would not have issued and renewed the policy as it did. *Id.*, ¶ 15.  Allstate alleges that it has paid at least 370,000 dollars in personal injury protection and uninsured motorist benefits under the policy.  *Id.*

Allstate asserts three counterclaims against Scott Hill.  In its First Counterclaim, Allstate seeks a declaratory judgment declaring that Allstate is not obligated to pay any further PIP benefits to anyone under the policy because John Paul, April Paul, and Scott Hill committed fraud on Allstate in the application process and by concealing certain facts in connection with the renewal of the policy.  *Id.*, ¶ ¶ 16-18.  Allstate also alleges that John Paul and April Paul breached the disclosure provisions of the Allstate policy.

In its Second Counterclaim, captioned as a claim for "Fraud/Concealment," Allstate claims that the "fraud and concealment committed by John Paul and April Paul during the application process and renewal periods entitles Allstate to rescind the policy of insurance and to a return of all benefits . . . paid to or on behalf of (Scott Hill)." *Id.*,

¶ 19-20.

In its Third Counterclaim, Allstate asserts a claim of unjust enrichment.  Allstate claims that benefits were paid to Scott Hill under a policy that was procured and

5

maintained through fraud, that it would be unfair and inequitable for [Scott Hill] to retain those benefits, and that Hill should be required to return to Allstate all benefits he has received under the policy.  *Id.*, ¶¶ 21 -24.

## IV.  HILL'S MOTION TO DISMISS

Hill argues that Allstate has not alleged any action by John Paul, April Paul (Hill), or Scott Hill which, if true, would permit Allstate to rescind the policy under Colorado law.  Absent such allegations, he argues, Allstate's counterclaims must be dismissed for failure to state a claim.  Again, I have granted Allstate's motion for summary judgment on Hill's remaining claims against Allstate.  Therefore, Hill's motion to dismiss Allstate's affirmative defenses will be denied as moot.

The parties agree that Colorado Division of Insurance Regulation (DOI Reg.) 5-2-3(d)(E)(4)(c) limits the bases on which an auto insurance policy regulated by the Colorado Accident Reparations Act can be rescinded.  The policy at issue here is regulated by that act.  Colorado Auto Accident Reparations Act, part 7 of article 4 of title 10, C.R.S. (Repealed by Laws 1997, H.B.97-1209, § 8, eff. July 1, 2003).

> An insurer may not rescind (I.e., cancel retroactively) a policy of insurance affording the coverages required by §§10-4-706, 10-4-707, and 10-4-710, C.R.S., or void such coverage except in case of fraud, as defined in §10-1-127.

DOI Reg. 5-2-3(d)(E)(4)(c).

The relevant version of §10-1-127, C.R.S. provides:

> (A) fraudulent insurance act is committed if a person knowingly and with intent to defraud presents, causes to be presented, or prepares with knowledge or belief that it will be presented to or by an insurer . . .or any agent thereof any written statement as part or in support of an application for the issuance or the rating of an insurance policy . . . which he or she knows to contain false information concerning any fact material thereto or if he or she knowingly and with intent to defraud or mislead conceals

information concerning any fact material thereto.

§10-1-127 (1), C.R.S.

In each of Allstate's three counterclaims, Allstate seeks relief that amounts to a partial or full rescission of the policy based on fraud allegedly committed by John Paul, April Paul, and Scott Hill.  Applying the requirements of DOI Reg. 5-2-3(d)(E)(4)(c), Allstate must allege fraud as defined by §10-1-127 to support any claim via which it seeks rescission of the policy as relief.

Hill argues that fraudulent concealment, as described in §10-1-127, is not an adequate basis for rescission of an insurance policy.  Hill notes that DOI Reg. 5-2-3(d)(E)(4)(b), which defines the bases for cancellation of an auto insurance policy providing coverages required by §§10-4-706 and 10-4-707, permits cancellation if "the applicant knowingly made a false statement on the application for insurance. . . ." *Id.* This portion of the regulation does not list fraudulent concealment of information from the insurer as a basis to cancel a policy.  If fraudulent concealment is not a valid basis for a cancellation under the regulation, Hill argues, then fraudulent concealment cannot be a valid basis for rescission (retroactive cancellation) of a policy.  I conclude that DOI Reg. 5-2-3(d)(E)(4)(c) is unambiguous, and must be applied as it is written.  Applying the regulation as it is written, any kind of fraud defined in §10-1-127, C.R.S., including fraudulent concealment, is a basis for rescission.

## A.  Insurance Fraud Under §10-1-127, C.R.S.

Allstate's three counterclaims rely on its allegations that John Paul, April Paul, and Scott Hill committed insurance fraud, as defined by §10-1-127, C.R.S..  For the sake of clarity, I will consider first these fraud allegations, including Allstate's second

counterclaim, captioned as a claim for Fraud/Concealment.

Allstate's allegations in its counterclaims sufficiently allege that John Paul committed insurance fraud, as defined by § 10-1-127, C.R.S.  Allstate's alleges that at the time of the application Paul told Allstate that he and April Paul were members of the same household, when they were not.  Allstate further alleges that Paul knowingly misrepresented his employment status.  Paul also allegedly failed to reveal that he and April Paul soon would be divorced.  Some of these misrepresentations are alleged to have been made in the written application.  *Counterclaim*, ¶ 7.  Allstate claims that each of the alleged misrepresentations and each of the concealed facts were material to its decision to issue the policy on the terms provided in the policy, and that it would not have acted as it did had it known the facts.  *Id.*, ¶¶ 9, 15.  These allegations are sufficient to state a claim that Paul committed insurance fraud, as defined by §10-1-127, C.R.S., when he applied for the Allstate policy.

The parties do not discuss whether an insured's request to renew an auto insurance policy amounts to an application for the issuance of a policy under §10-1-127.  I will assume, without deciding, that a renewal request does constitute an application.  Allstate alleges that the policy was renewed, and that John Paul, April Paul, and Scott Hill failed to reveal to Allstate various material changed circumstances when the policy was renewed.  These circumstances include the Paul's divorce, the fact that John Paul and April Paul no longer resided in the same household, and the Hill's marriage.  Allstate notes that the policy included a term requiring its insureds to inform Allstate of changes in address and changes of resident operators.

Assuming a request to renew the policy is an application for the issuance of a

8

policy, I conclude that these allegations are sufficient to state a claim that John Paul and April Paul both committed insurance fraud when they renewed the policy. As insureds, they essentially were applying for a new policy and they failed to reveal material changes in their circumstances to Allstate. John and April Paul's duty to reveal this information is defined clearly in the policy.

On the other hand, I conclude that Allstate's allegations do not state a claim for insurance fraud against Scott Hill. Scott Hill never was an applicant for insurance under the Allstate policy at issue, either when the policy was issued initially or when it was renewed. Allstate alleges that Hill never told Allstate about the Paul's divorce, about April Paul's remarriage, or that the Pauls did not live in the same household. Hill, however, was not an applicant for insurance, and he did not agree to the terms of the policy. Under these circumstances, the counterclaims do not indicate any basis to conclude that Hill had a duty to inform Allstate about these facts, either as an applicant for insurance or as an insured under the Allstate policy. Under these circumstances, Hill's alleged failure to reveal this information to Allstate does not constitute fraud under §10-1-127, C.R.S.

Allstate's second counterclaim against Hill is captioned as a claim for "Fraud/Concealment." In this claim Allstate alleges that the "fraud and concealment committed by John Paul and April Paul during the application process and renewal periods entitles Allstate to rescind the policy of insurance and to a return of all benefits. . . ." *Counterclaim*, ¶ 20. Allstate does not assert fraudulent concealment by Hill as a basis for this claim. Reading Allstate's factual allegations more broadly, taking all well-pleaded facts as true, and construing those allegations in the light most favorable to

9

Allstate, I find that Allstate cannot prove facts consistent with its allegations that would establish that Hill committed insurance fraud, as defined in § 10-1-127, C.R.S.  Hill's motion to dismiss should be granted as to Allstate's second counterclaim.

### B.  First Counterclaim - Declaratory Judgment

In its first counterclaim, Allstate asserts that John Paul, April Paul, and Scott Hill "committed fraud on Allstate in the application process and by concealment of certain facts in connection with the renewal of the policy."  *Counterclaim*, ¶ 17.  Allstate seeks a declaratory judgment holding that Allstate is not "obligated to pay any further or additional PIP benefits, to anyone, under the Allstate Policy."  *Id*, ¶ 18.

Any person interested in the subject matter may obtain the determination of "any question of construction or validity" arising under any contract, or a declaration of "rights, status, or other legal relations thereunder."  §13-51-106, C.R.S.; C.R.C.P. 57(b); *Villa Sierra Condominium Ass'n v. Field Corp.*,  878 P.2d 161, 164 (Colo.App.1994). "A party that has been fraudulently induced to enter into a contract may rescind the contract to restore the status quo." *Crawford Rehabilitation Services, Inc. v. Weissman*, 938 P.2d 540, 547 (Colo.1997) (citing Restatement (Second) of Contracts § 164 (1981)).

As discussed above, Allstate has alleged adequately that John Paul and April Paul induced Allstate to issue and renew the insurance policy by their fraud, as defined under §10-1-127, C.R.S.  These allegations of fraud are sufficient to state a claim for declaratory judgment concerning the validity of the Allstate policy, and the rights, status, and legal relationships of those who claim benefits under the policy, including

Hill. Hill's motion to dismiss Allstate's first counterclaim for declaratory judgment must be denied.

### C.  Unjust Enrichment

Unjust enrichment is a judicially created remedy designed to avoid benefit to one person to the unfair detriment of another person. Under Colorado law, unjust enrichment occurs when (1) at the plaintiff's expense, (2) the defendant received a benefit (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying. *Martinez v. Colorado Dept. of Human Services*,  97 P.3d 152, 159 (Colo.App. 2003).

Even though Allstate's allegations do not support a claim of insurance fraud against Hill himself, I conclude that Allstate's allegations are sufficient to state a claim for unjust enrichment against Hill, as conservator of Katelyn Hill's estate.  Hill received a benefit, i.e., payment of insurance benefits under the policy, at the expense of Allstate.  Allstate has alleged that the policy was procured by fraud.  The alleged fraud, if true, could constitute circumstances that would make it unjust for Hill to retain the benefits of an insurance policy procured by fraud.  *See Restatement of Restitution* § 112 cmt. a (2005) (benefit conferred as a result of fraud may be basis for unjust enrichment).  Absent the existence of a valid Allstate policy, Hill has no other claimed entitlement to the insurance benefits Allstate has paid to him, as conservator of Katelyn Hill's estate.  Hill's motion to dismiss Allstate's third counterclaim for unjust enrichment must be denied.

### V.  ALLSTATE'S MOTION TO DISMISS JOHN PAUL'S COUNTERCLAIMS

In its Third-Party Complaint Against John Paul [#130], filed September 16, 2005,

Allstate asserts a claim for declaratory relief and a claim for fraud, misrepresentation, and concealment.  These claims are based on the allegations of John Paul's fraudulent representations and concealment, discussed above.  John Paul filed an answer and counterclaim [#176], filed November 25, 2005, and asserts three counterclaims against Allstate: 1) bad faith breach of insurance contract; 2) common law bad faith; and 3) a claim for punitive damages.  Allstate argues that John Paul's allegations are not sufficient to state claims on which relief can be granted.

In his answer and counterclaim, Paul denies that he made any false statements or misrepresentations when he applied for the Allstate policy, and he denies that he concealed any material facts when he applied for the policy.  Paul alleges that he informed Allstate of his pending divorce during the application process.  He further alleges that Allstate knew of his divorce, or was on inquiry notice of the divorce, prior to the accident.  *Paul's Counterclaim*, ¶¶ 8-13.  Paul alleges also that, under the terms of the policy, the policy can be cancelled for fraud only if the insured "knowingly made a false statement on the application" for the policy, or if the insured "knowingly and willfully made a false material statement on a claim" under the policy.  *Id*., ¶ 18. Assuming Paul's factual allegations to be true, Paul made no fraudulent representations to Allstate, and did not fraudulently conceal any material facts from Allstate.

### A.  Bad Faith Breach of Insurance Contract

Colorado courts recognize the tort of bad faith breach of insurance contract. Typically, a first-party bad faith claim arises when an insured makes a claim against his insurer for benefits accruing under the insured's policy.  ***Goodson v. American***

*Standard Insurance Co.*, 89 P.3d 409, 414 (Colo. 2004).  To assert such a claim, an

insured plaintiff must allege 1) the existence of an insurer's duty to act in good faith and

to deal fairly with its insured; 2) that the defendant insurer acted unreasonably under

the circumstances; 3) that the defendant insurer knew that its position was

unreasonable, or recklessly disregarded the fact that its position was unreasonable;

and 4) that the defendant insurer's unreasonable position was a cause of the plaintiff's

damages.  *See CJI-Civ. 4th* 25:2;  *Daugherty v. Allstate Insurance Co.*, 55 P.3d 224,

228 (Colo. App. 2002).

Allstate argues that an unreasonable denial of benefits is a necessary element

of every claim for bad faith breach of insurance contract.  *Goodson*, 83 P.3d at 417.

Allstate says it promptly paid benefits under the policy in question.  Allstate says it now

is raising questions about the propriety of those payments because it has discovered

John Paul's fraud.  Allstate argues further that its resort to a judicial forum to resolve

this dispute is reasonable as a matter of law.  Under these circumstances, Allstate

argues, Paul cannot allege a claim for bad faith breach of insurance contract.  I

disagree.

The factual circumstances of this case present an unusual basis for an

insurance bad faith claim.  However, I conclude that a bad faith breach of insurance

contract claim can be based on an insurance company's effort to require an insured to

repay insurance benefits previously paid.  "(T)he tort of bad faith breach of an

insurance contract encompasses an entire course of conduct and is cumulative."  *Dale*

*v. Guaranty Nat. Ins. Co.*,  948 P.2d 545 (1997), 551 -552 (Colo. 1997) (citations

omitted).  Requiring an insured to repay benefits previously paid is, in effect, a denial of

benefits, and is part of an insurer's course of conduct toward its insured.  Of course, such a claim is viable only when the plaintiff alleges facts which, if true, would satisfy all of the elements of such a claim.

Here, Paul alleges that he purchased an Allstate auto insurance policy, and that Allstate has a duty of good faith and fair dealing as to Paul in all actions concerning the policy.  Paul's purchase of the policy creates such a duty.  Paul alleges that all of his factual representations on his application for insurance were true, that he made no misrepresentations on the application, and that he did not conceal any material facts. Despite these circumstances, Paul alleges, Allstate is attempting to void the policy *ab initio*, and to recover all payments made under the policy.

Assuming Paul's factual allegations to be true, Allstate's efforts to recover payments made under the policy, without any valid basis, readily can be seen as unreasonable under the circumstances.  If Allstate is aware, as Paul alleges, that Paul made no false representations and did not conceal any material facts, then Allstate's pursuit of a lawsuit to recover benefits paid under the policy can be seen as constituting knowing or reckless disregard of the validity of the underlying claim. Assuming Paul's allegations to be true, Allstate's actions easily could be determined to constitute a breach of Allstate's duty of good faith and fair dealing.  Allstate does not challenge the sufficiency of Paul's allegations concerning the harm caused to him by this alleged breach.

Allstate argues also that an insurer properly may resort to a judicial forum for a declaration of its rights under a policy, without violating its duty of good faith and fair dealing.  "Resort to a judicial forum is not per se bad faith or unfair dealing on the part

14

of an insurer regardless of the outcome of the suit." ***State Farm Mut. Auto. Ins. Co. v. Lee*** 353 F.Supp.2d 1119, 1129 (D.Colo. 2005); ***Pham v. State Farm Mut. Auto. Ins. Co.***, 70 P.3d 567, 572 (Colo App. 2003) (insurer may challenge fairly debatable claims in judicial forum without violating duty of good faith and fair dealing).  In ***Lee***, the court concluded that State Farm's position in the lawsuit, although ultimately unsuccessful, was not an unreasonable position to advance and thus could not be the basis for a bad faith claim.  ***Id***.  These cases preclude the assertion of an insurance bad faith claim based on an insurer's assertion of a reasonable position in a lawsuit concerning the insurance benefits due under the policy.

Here, Paul alleges that Allstate's challenge to the policy and the claims paid under the policy is unreasonable, because Allstate is aware that Paul made no fraudulent representations and did not fraudulently conceal facts.  Colorado law does not preclude the assertion of an insurance bad faith claim based on an unreasonable position taken by an insurance company in a lawsuit concerning the policy and benefits due under the policy.  The allegations in Paul's counterclaim are sufficient to state a claim for bad faith breach of insurance contract by Allstate.

### B.  Common Law Good Faith & Fair Dealing

Every contract in Colorado contains an implied duty of good faith and fair dealing.  ***See, e.g., Goodson***, 89 P.3d at 414.  In most contractual relationships, a breach of this duty will result in damages for breach of contract, and will not give rise to tort liability.  ***Id***.  As discussed above, bad faith breach of an insurance contract is an exception which does give rise to tort liability.

To establish a claim for breach of the implied duty of good faith and fair dealing,

the plaintiff must show that 1) the defendant entered into a contract with the plaintiff; and 2) the defendant failed to act in good faith and to deal fairly with the plaintiff in performing or enforcing certain provisions of the contract. *See CJI-Civ. 4th* 30:1A. Paul alleges that Allstate acted unreasonably when it failed to investigate all grounds that it now claims as a basis to deny benefits, and when it waited for three years before filing its claims against Paul. *Counterclaim*, ¶¶ 42-43. Paul alleges also that, in filing suit against Paul, Allstate "knew, and acted in reckless disregard of, the fact that it had no basis in law to rescind the Policy." *Counterclaim*, ¶ 44.

Allstate argues that Paul's allegations are not sufficient to state a claim for breach of the implied contractual covenant of good faith and fair dealing because Allstate's payment of interim or conditional benefits evidences good faith, not bad faith. Allstate notes also that it complied with its duty to investigate the facts surrounding its fraud claims before filing suit against Paul, which also is evidence of good faith. Allstate's arguments disregard the required assumption that Paul's factual allegations are true. Again, Paul alleges that Allstate is seeking recovery of payments it made under the policy even though Allstate knows that there is no factual basis for its fraud claims against Paul. Such actions by Allstate, if proven, readily could be viewed as a failure to act in good faith and to deal fairly with the plaintiff in performing or enforcing certain provisions of the contract. Paul's allegations are sufficient to state a claim for breach of the implied duty of good faith and fair dealing.

Allstate argues also that an insured may only assert one cause of action against an insurer for bad faith breach of contract because a bad faith breach of insurance contract claim encompasses the entire course of conduct between the insurer and the

insured.  *Motion to dismiss John Paul's counterclaims*, p. 10.  I disagree.  The cases cited by Allstate do not stand for this specific proposition.  While some of the proof necessary to establish the two claims may be similar or identical, proof of one claim is not contrary to proving the other.  I note that the captions to the Colorado jury instructions concerning the common law contractual duty of good faith and fair dealing speak of non-insurance contracts.  **CJI-Civ. 4**$^{th}$ 30:1A; 30:1B.  These captions, however, do not carry the force of law, and nothing in the instructions themselves excludes insurance contracts from the common law duty of contractual good faith and fair dealing.  The Colorado Supreme Court has noted that the "covenant of good faith and fair dealing exists in every contract to enforce the reasonable expectations of the parties."  **Amoco Oil Co. v. Ervin**,  908 P.2d 493, 499 (Colo. 1995).  Colorado law does not exclude insurance contracts from this covenant.  Rather, Colorado law imposes an additional covenant in insurance contracts.  In the insurance context, the breach of either covenant properly may form the basis of a claim.

The allegations in Paul's counterclaim are sufficient to state a claim for breach of the common law duty of good faith and fair dealing by Allstate.

### C.  Punitive Damages

Paul's third counterclaim outlines his allegations in support of his claim for punitive damages on his claim for bad faith breach of insurance contract.  Such damages are available if the insured shows that the insurer's breach was accompanied by circumstances of fraud, malice, or willful and wanton conduct.  **Goodson**, 89 P.3d at 415.  Assuming Paul's allegations to be true, those allegations are sufficient to sustain his claim for punitive damages.

## VI.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Plaintiff's Motion to Dismiss Allstate's Affirmative Defenses and Counterclaims Based on Allegations of Fraud** [#140], filed October 6, 2005, is **DENIED** as moot as to Allstate's affirmative defenses;

2.  That under FED. R. CIV. P. 12(b)(6), the **Plaintiff's Motion To Dismiss Allstate's Affirmative Defenses and Counterclaims Based on Allegations of Fraud** [#140], filed October 6, 2005, is **GRANTED** as to Allstate's second counterclaim against Hill, captioned as a claim for "Fraud/Concealment";

3.  That the **Plaintiff's Motion To Dismiss Allstate's Affirmative Defenses and Counterclaims Based on Allegations of Fraud** [#140], filed October 6, 2005, otherwise is **DENIED**; and

4.  That **Allstate Insurance Company's motion To Dismiss John Paul's Counterclaims** [#179], filed December 15, 2005, is **DENIED**.

Dated January 23, 2006, at Denver, Colorado.

BY THE COURT:

s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge

18