**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 04-cv-0865-REB-CBS

SCOTT HILL, as Conservator of the Estate of Katelyn Hill,

    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,

    Defendant.

---

ALLSTATE INSURANCE COMPANY,

    Counterclaim Plaintiff,

v.

SCOTT HILL, as Conservator for the Estate of Katelyn Hill,

    Counterclaim Defendant.

---

ALLSTATE INSURANCE COMPANY,

    Third-Party Plaintiff,

v.

JOHN PAUL,

    Third-Party Defendant.

---

**ORDER CONCERNING MOTIONS FOR SUMMARY JUDGMENT**

**Blackburn, J.**

This matter is before me on the following motions: 1) **Defendant Allstate Insurance Company's Motion for Summary Judgment** [#163], filed November 7, 2005; and 2) **Plaintiff's Motion for Partial Summary Judgment** [#168], filed November 17, 2005. I grant Allstate's motion for summary judgment, and deny plaintiff's motion for summary judgment.[1]

## I. JURISDICTION

I have jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship).

## II. STANDARD OF REVIEW

Under **FED. R. CIV. P. 56(c)**, summary judgment is proper only if the evidence, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. ***Farthing v. City of Shawnee, Kan***. 39 F.3d 1131, 1134 (10th Cir. 1994). A "material" fact is one "that might affect the outcome of the suit under the governing law," ***Id.*** at 1135 (citing ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986)), and a "genuine" issue is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Id.*** (citing ***Anderson***, 477 U.S. at 248).

I have carefully reviewed the record in this case, including the pleadings, discovery, and affidavits on file, I have carefully considered the reasons stated, arguments advanced, and authorities cited by the parties in their papers. I have

---

[1] The issues raised by and inherent to these motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

2

employed the analysis required by apposite law. *See **Anderson v. Liberty Lobby, Inc.**,* 477 U.S. 242, 250 (1986); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 325 (1986); ***Matsushita Electric Industrial Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986); ***Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.****,* 912 F.2d 1238, 1241 (10th Cir.1990); ***Redmon v. United States***, 934 F.2d 1151,1155 (10th Cir. 1991); and ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir.1994).

### III. FACTS

On July 25, 2002, Katelyn Hill was seriously injured in a car accident. Katelyn's mother, April Hill, was killed in the accident. Plaintiff Scott Hill, Katelyn's father and the conservator of her estate, claims that the car in which Katelyn was riding was insured by defendant Allstate Insurance Company. In his complaint, Scott Hill claims Katelyn is entitled to additional benefits, known as APIP benefits, under the Allstate Policy. Acting as the conservator of Katelyn Hill's estate, Scott Hill seeks an award of APIP benefits from Allstate.

The insurance policy on which Scott Hill bases his claims against Allstate was purchased by third-party defendant John Paul on August 17, 2000. On that date, John Paul and April Paul (later April Hill) were married but separated. The Allstate insurance policy purchased by John Paul listed the car that later was involved in the accident as an insured vehicle. John Paul and April Paul's dissolution of marriage was finalized on November 16, 2000. April Paul later married plaintiff Scott Hill, and Katelyn Hill is a child of this marriage. April Paul changed her name to April Hill after the marriage. For the sake of clarity, I will refer to her as April Paul. The Allstate policy apparently was

3

renewed regularly until July 25, 2002, when the accident occurred.

In its counterclaim against Scott Hill, Allstate claims that John Paul procured the policy by fraud. Allstate claims that it is entitled to rescind the insurance policy because it was procured by fraud, and because April Hill and Scott Hill perpetuated the fraud by renewing the policy without informing Allstate that John Paul and April Paul were divorced, and that April had married Scott Hill. Allstate's counterclaim is not at issue in the motions for summary judgment. For the purpose of resolving the motions for summary judgment, I will assume without deciding that the Allstate policy covered the car in which Katelyn Hill was a passenger at the time of the incident.

When the policy was sold, and at the time of the incident, Colorado law required auto insurance policies to include personal injury protection benefits, known as PIP benefits. Colorado Auto Accident Reparations Act, part 7 of article 4 of title 10, C.R.S. (Repealed by Laws 1997, H.B.97-1209, § 8, eff. July 1, 2003) (No-Fault Act). Allstate has paid 100,000 dollars in PIP benefits to Scott Hill for the benefit of Katelyn Hill. That is the amount of PIP coverage required under the No-Fault Act. The No-Fault Act also required auto insurers to offer to their insureds optional additional personal injury protection (APIP) benefits. Scott Hill claims that Allstate sold the auto insurance policy in question without properly offering APIP benefits, as required by the No-Fault Act.

Based on Allstate's alleged failure to make a proper offer of APIP benefits, Scott Hill asserts three claims against Allstate: 1) a claim for reformation of the Allstate insurance policy to include APIP benefits unlimited in time and amount for Katelyn Hill (fourth claim for relief); 2) a claim for breach of the reformed insurance contract (seventh claim for relief); and 3) a claim for bad faith breach of the reformed insurance

contract (eighth claim for relief).  The parties' motions for summary judgment address these claims.  Hill's other claims against Allstate and other defendants have been dismissed or otherwise resolved.  Additional facts are discussed below.

## IV.  HILL'S REFORMATION CLAIM

Prior to its repeal, the No-Fault Act required auto insurers to offer optional APIP benefits to their customers when issuing an auto insurance policy.  The particular APIP benefits that Colorado auto insurers were required to offer under the No-Fault Act were specified in §10-4-710, C.R.S.  Section 10-4-710, C.R.S. required that

> (2)(a) Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10-4-706 (basic PIP protection), at the option of the named insured:
>
> (I)  Compensation of all expenses of the type described in section 10-4-706(1)(b) [medical treatment] without dollar or time limitation; or
>
> (II) Compensation of all expenses of the type described in section 10-4-706(1)(b) [medical treatment] without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.
>
> (b) A complying policy may provide that all benefits set forth in section 10-4-706(1)(b) to (1)(e) and in this section are subject to an aggregate limit of two hundred thousand dollars payable on account of injury to or death of any one person as a result of any one accident arising out of the use or operation of a motor vehicle.

Hill claims Allstate did not comply with the offer requirements of §10-4-710 when it sold the auto insurance policy at issue to John Paul.  Under Colorado law, the remedy for an insurance company's failure properly to offer APIP benefits is for the court to reform the subject policy to include the APIP benefits identified in §10-4-710(2)(a), C.R.S.  In other words, when an insurer fails to offer the insured APIP

5

coverage that satisfies the No-Fault Act, "additional coverage in conformity with the offer mandated by statute will be incorporated into the policy . . . " ***Brennan v. Farmers Alliance Mutual Insurance Co***., 961 P.2d 550, 554 (Colo. App. 1998). Hill seeks reformation of Paul's Allstate policy based on Allstate's alleged failure properly to offer APIP benefits to Paul in conformity with the offer mandated by the No-Fault Act. Allstate argues that the undisputed facts in the record do not support Hill's claim that Allstate's offer of APIP coverage to Paul was improper in any way that supports a claim for reformation.

### A. State Farm's Offer of APIP Coverage to Paul

Paul first applied for the auto insurance policy at issue on August 17, 2000. Christine Clifford (now Christine Pitcher), spoke to Paul in person and assisted Paul with the application. As part of this process, Pitcher gave Paul Allstate's PIP disclosure form, told him that basic PIP was included in the policy, and that enhanced PIP (APIP) coverage was available, with an aggregate limit of 200,000 dollars. Christine Pitcher says she focused Paul's attention on the PIP disclosure form and outlined generally for him the purpose of PIP and APIP coverage. *Hill's motion for summary judgment*, Exhibit 3 (Pitcher deposition), pp. 36, 59-60. Paul declined Pitcher's offer to give him a quote for APIP coverage. *Hill's motion for summary judgment*, p. 5. Later, Pitcher reviewed the coverages Paul had chosen and verified that Paul had not chosen APIP coverage. Paul then signed the application for insurance. *Id.*

Allstate's PIP disclosure form describes the options for basic PIP coverage on page one, and describes eight options for APIP coverage on page two. *Allstate's motion for summary judgment*, Exhibit A-6 (PIP Disclosure Form). These PIP and APIP

6

options are summarized in two charts, and the eight APIP options are designated VB01 through VB08. *Id.* The paragraph that introduces the chart says the optional APIP coverages "may only be purchased when one of the basic PIP coverage options is purchased." *Id.*, p. 2.

Allstate argues that the options designated as VB01 and VB02 offer optional APIP coverage that meets the requirements of §10-4-710, C.R.S. I agree. Option VB02 provides coverage of medical expenses without any time limitation, with a 200,000 thousand dollar "aggregate limit for PIP and Additional PIP." *Id.* This APIP coverage offer satisfies the requirements of §10-4-710 (2)(a)(I), C.R.S. Option VB01 provides the same coverage for medical expenses, plus work loss coverage of "100% of the first $125/week loss in gross income, 85% of remaining loss in gross income," without any time limitation. *Id.* This APIP coverage offer satisfies the requirements of §10-4-710 (2)(a)(II), C.R.S. The 200,000 dollar cap on these coverages is permitted by §10-4-710 (2)(b), C.R.S.

### B. Alleged Improprieties in Allstate's APIP Offer & Policy

In the context of an offer of uninsured motorist coverage, the Colorado Supreme Court has held that "an insurer's duty of notification and offer must be performed in a manner reasonably calculated to permit the potential purchaser to make an informed decision on whether to purchase UM/UIM coverage higher than the minimum statutory liability limits . . . ." ***Allstate Insurance Co. v. Parfrey***, 830 P.2d 905, 913 (Colo.1992). The ***Parfrey*** court suggested several factors to be considered in determining whether this duty has been satisfied. The factors suggested by the ***Parfrey*** court are

> the clarity with which the purpose of UM/UIM coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of UM/UIM coverage could be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer.

*Id*. The *Parfrey* court did not provide an exhaustive list of relevant factors, and none of the discrete factors listed in *Parfrey* is dispositive or preponderant. Rather, "the dispositive consideration is whether, under the totality of circumstances, the insurer's notification and offer to the insured adequately informed the insured that UM/UIM coverage was available" in the amounts required to be offered under the Act. *Id*. at 914 n. 5. An offer of optional enhanced UM/UIM coverage is analogous to an offer of optional APIP coverage, and the *Parfrey* analysis is applicable to the offer of APIP coverage at issue here.

Hill claims that Allstate's offer of APIP coverage to Paul did not meet the requirements of §10-4-710, and was not given in a manner reasonably calculated to permit Paul to make an informed decision. Hill claims also that policy declarations and other documents issued to Paul by Allstate did not include statutorily mandated coverages, meaning that Allstate could not have offered the required coverages.

### 1.  Alleged Flaws In APIP Offer

Hill claims that Allstate's offer of APIP coverage to Paul was flawed in several respects. First, Hill notes that Allstate's summary of PIP coverage for medical expenses, rehabilitation, and wage loss shows that these coverages are per person, rather than per person per accident. *Hill's motion for summary judgment*, p. 11. Because PIP and APIP coverages are designed to work together, Hill argues, a flaw in

Allstate's offer of PIP coverage also undermines the validity of its offer of APIP coverage. The fact that Allstate's summary of PIP coverage does not use the phrase "per person per accident," however, does not make Allstate's offer of PIP coverage inadequate. By statute, basic PIP coverage provides certain levels of coverage "per person for any one accident." §10-4-706(1)(b), (1)(c), C.R.S. Allstate's summary of PIP coverage describes the relevant coverages as covering expenses incurred because of covered losses caused by "an accident" or "a motor vehicle accident." PIP Disclosure Form, p. 1. The fact that the chart which summarizes PIP coverage does not specify that the coverage amounts apply per person, per accident does not make the offer of PIP coverage non-compliant with the relevant Colorado law.

Second, Hill complains that the 200,000 dollar aggregate limit for APIP coverage is shown as a per-policy limit, and not a per person, per accident limit. *Hill's motion for summary judgment*, p. 11. The chart summarizing APIP coverage does not define this aggregate limit as a per-policy limit. Rather, the chart states that there is a "$200,000 aggregate limit for PIP and Additional PIP." PIP Disclosure Form, p. 2. The introduction to the chart notes that APIP coverage provides "increased coverage" for various types of PIP compensable losses. Again, Allstate's summary of PIP coverage describes the relevant coverages as covering expenses incurred because of covered losses caused by "an accident" or "a motor vehicle accident." PIP Disclosure Form, p.1. By statute, basic PIP coverage provides certain levels of coverage "per person for any one accident." §10-4-706(1)(b), (1)(c), C.R.S. In this context, the fact that the chart summarizing APIP coverage does not specifically note that the 200,000 cap is a

9

per person, per accident limit does not make the offer of PIP coverage non-compliant with the relevant Colorado law.

Third, Hill argues that the chart summarizing APIP coverage indicates that essential services coverage is eliminated if option VB01 or VB02 is selected, despite the fact that essential services coverage is a required part of basic PIP coverage. *Hill's motion for summary judgment*, p. 11. APIP options VB01 and VB02 do show "no coverage" for essential services, but in the context of the PIP Disclosure Form, this designation cannot reasonably be read as indicating that an insured will have no coverage for essential services if he selects option VB01 or VB02. The form clearly indicates that APIP coverage supplements PIP coverage, and does not supplant PIP coverage. Further, the form indicates clearly that PIP coverage includes coverage for essential services.

Fourth, Hill complains that the PIP Disclosure Form shows time limits on wage losses for coverage options VB03 through VB08. *Hill's motion for summary judgment*, p. 11. This factual assertion is correct, undisputed, and irrelevant. By offering APIP coverage as described in options VB01 and VB02, Allstate complied with §10-4-710, C.R.S. Once those required offers properly were made, nothing in Colorado law prohibited Allstate from offering other forms of APIP coverage, such as APIP coverage with time limits on wage loss coverage.

Fifth, Hill asserts that "(n)one of the options on Form AUR13-2 (PIP Disclosure Form) remove the five year time limit from medical and rehabilitation coverages . . . .". *Hill's motion for summary judgment*, p. 11. For basic PIP, the PIP Disclosure Form indicates that there is a five year time limit on coverage for medical expenses, and a

ten year time limit on coverage for rehabilitation expenses. PIP Disclosure Form, p. 1. The form shows no time limit for APIP medical expense coverage. No time limit is permitted for APIP medical expense coverage, §10-4-710 (2)(a)(I) & (II), C.R.S., and the summary form does not indicate that there is any such time limit. The summary form is compliant with the applicable statutory requirement. The fact that rehabilitation expenses may be included in the definition of medical expenses in the basic PIP description of the policy, as claimed by Hill, has no bearing on whether the APIP offer made by Allstate complied with Colorado law.

Sixth, Hill argues that Allstate's APIP offer does not indicate that pedestrians are included in the offered APIP coverages. *Hill's motion for summary judgment*, p. 11. Nothing in the PIP Disclosure form specifically includes or excludes pedestrians from the offered APIP coverages. The No-Fault Act designates certain types of persons who are covered by the coverages mandated and permitted by the Act. Nothing in §10-4-710 requires that the types of persons covered be specified in a complying offer of APIP coverage. I find as a matter of law that §10-4-710, C.R.S., did not require Allstate to list the types of persons who were covered by PIP and APIP coverages, including pedestrians, when it offered APIP coverages to Paul. The fact that pedestrians are not specified as parties entitled to APIP coverage does not make Allstate's offer of APIP coverage to Paul non-compliant with Colorado law.

Seventh, Hill argues that Christine Pitcher, the Allstate agent who discussed Paul's insurance application with Paul, did not explain the optional APIP coverage adequately. *Hill's motion for summary judgment*, p. 14. Absent such an explanation, Hill argues, the offer was not reasonably calculated to permit Paul to make an informed

11

decision about APIP coverage. Hill complains that Pitcher did not explain the APIP coverages required by Colorado law, and relied instead on the PIP Disclosure Form, which he claims is inaccurate. He also complains that Pitcher did not provide Paul with a price quote for APIP coverage.

As discussed above, I find that the PIP Disclosure Form accurately summarized the APIP coverages required by the No-Fault Act. It is undisputed that Pitcher met with Paul personally, gave Paul this form, and Paul signed the form. *Allstate's motion for summary judgment*, p. 5 (specific citations to deposition testimony); PIP Disclosure Form, p. 4. Pitcher noted that APIP coverage provided enhanced coverage for an additional premium, and asked Paul if he wanted a price quote for such coverage. Paul declined a quote. *Id*. Pitcher asked if Paul wanted further information about APIP coverage, but Paul declined. *Id*.

When a person is given an accurate written summary of APIP coverage, a ready opportunity to obtain more information about APIP coverage, and a ready opportunity to obtain a quote of the cost of such coverage, the offer of APIP coverage is made in a manner reasonably calculated to permit the potential purchaser to make an informed decision. **Johnson v. State Farm Mut. Auto. Ins. Co.**, 2005 WL 3346563, *3 (10th Cir. 2005) (unpublished opinion) (face-to-face meeting in which insured receives pamphlet explaining the different levels of PIP coverage is sufficient offer under No-Fault Act). In this case, APIP coverage was explained accurately and with reasonable clarity on a written form, and further information readily was available. I find as a matter of law that Allstate's offer of APIP coverage to Paul complied with the requirements of §10-4-710, C.R.S.

## 2. Alleged Flaws In Policy Documents

Hill claims also that policy documents issued to Paul after he purchased insurance did not provide the coverages required by law.  He argues that Allstate could not properly offer the legally mandated coverages if the policy did not include such coverages.  For example, as with the PIP Disclosure Form, Hill notes that certain policy forms do not specify that pedestrians are included in the term "injured person" for the purpose of PIP and APIP coverage.  Pedestrians are not explicitly excluded, however, and the policy provides that Allstate will pay PIP and APIP benefits to an injured person in accordance with the No-Fault Act.  *Allstate's response to Hill's motion for summary judgment*, Exhibit A-2, pp. 10-11, 15.  As with the PIP Disclosure Form, Hill notes that the statement of the aggregate limit for PIP coverage does not include the phrase "per person, per accident."  The policy provides that Allstate will pay benefits for injuries caused by "an accident."  *Id.*, pp. 11, 15.  The policy also provides that Allstate will pay benefits in accordance with the No-Fault Act, which provides that the aggregate limits apply to each covered accident.  §10-4-706(1)(b), (1)(c), C.R.S.  There is no legal requirement that Allstate use the phrase "per person, per accident" in defining its PIP coverages.

I have reviewed these purported flaws in the Allstate documents issued to Paul, as well as the others described by Hill in his motion for summary judgment.  Based on the undisputed facts in the record, including  the text of the policy documents in the record, I conclude as a matter of law that the Allstate policy documents provide the coverages required by the No-Fault Act.  Therefore, Hill's claim that Allstate's offer of APIP coverages was faulty because Allstate's policy was faulty must fail.

### C. Conclusion

The undisputed facts in the record demonstrate that Allstate's offer of APIP coverage to Paul complied with the requirements of §10-4-710, C.R.S., and that the optional coverages required under §10-4-710 were available from Allstate. Viewing this evidence in the light most favorable to Hill, no reasonable fact finder could conclude that Allstate failed properly to offer APIP benefits to Paul. Therefore, Hill is not entitled to reformation of the Allstate policy at issue here, and Allstate is entitled to summary judgment on Hill's reformation claim.

## V.  HILL'S OTHER CLAIMS

Hill's claim for breach of contract (seventh claim for relief) and his claim for bad faith breach of insurance contract (eighth claim for relief)  both are dependent on Hill's contract reformation claim.  Hill's breach of contract claim is based on his claim that the Allstate policy must be reformed to include APIP benefits, because Allstate did not make a compliant offer of APIP coverage.  Hill alleges that Allstate breached the reformed insurance contract because it failed to pay APIP benefits on behalf of Katelyn Hill.  In his bad faith claim, Hill alleges that Allstate knew that its refusal to provide APIP benefits for Katelyn Hill was unreasonable, and that Allstate therefore is subject to payment of treble damages and to other relief provided by Colorado law.  Allstate's failure to provide APIP benefits to Katelyn Hill is the only alleged basis for these claims.

However, Allstate is entitled to summary judgment on Hill's reformation claim. Absent reformation of the policy, there is no basis on which Hill can claim that Katelyn Hill is entitled to APIP benefits under the Allstate policy.  Absent an entitlement to APIP benefits, Hill cannot argue that Allstate breached the insurance contract, or willfully

14

disregarded an obligation to provide APIP benefits to Katelyn Hill. Viewing the facts in the record in the light most favorable to Hill, Allstate is entitled to summary judgment on Hill's seventh and eighth claims for relief.

## VI.  HILL'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In his motion for partial summary judgment, Hill argues that he is entitled to summary judgment on his contract reformation claim because the undisputed facts in the record demonstrate that Allstate did not make the offer of APIP coverage required by Colorado law.  For the reasons discussed above, I conclude that the undisputed facts in the record show that Allstate did make a proper offer of APIP coverage. Viewing the facts in the record in the light most favorable to Allstate, Hill is not entitled to summary judgment on his reformation claim.

## VII.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant Allstate Insurance Company's Motion for Summary Judgment** [#163], filed November 7, 2005, is **GRANTED**;

2. That the **Plaintiff's Motion for Partial Summary Judgment** [#168], filed November 17, 2005, is **DENIED**; and

3. That the fourth, seventh, and eighth claims for relief asserted in the First Amended Complaint and Jury Demand filed by plaintiff Scott Hill as Conservator of the Estate of Katelyn Hill, [#44], filed September 8, 2004, are **DISMISSED** with prejudice.

Dated January 24, 2006, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**

**Robert E. Blackburn**  
**United States District Judge**